FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Apr 04 2023

KEVIN P. WEIMER , Clerk

By: s/Kari Butler

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID BESS,

     Plaintiff,

 v.

SHERIFF PATRICK "PAT" LABATT, in
his official capacity; MAJOR NINA
MCKINNEY, individually; MAJOR
JEFFREY MOFFETT, individually;
CAPTAIN LUCINDA STROZIER,
individually; CAPTAIN TYNA TAYLOR
individually; NIKKI HAWKINS,
individually; and FULTON COUNTY,
GEORGIA,

     Defendants.

CIVIL ACTION FILE NO.

1:22-CV-02413-JPB-WEJ

## FINAL REPORT AND RECOMMENDATION

Plaintiff, David Bess, filed this action [1] on June 15, 2022, against the

Fulton County Sheriff's Office and the other Defendants listed in the above style.

Defendants subsequently filed a Motion to Dismiss [4]. Plaintiff filed a Response

Brief [8], but both in that Brief and in a status conference [11] he indicated a desire

to amend his Complaint.  The Court granted him an extension to do so through December 15, 2022, which was later extended through January 15, 2023.

Plaintiff filed a Motion for Leave to Amend and proposed Amended Complaint, which dropped the Fulton County Sheriff's Office as a Defendant, on January 15, 2023 [12].  Over Defendants' objection [13], the Court granted leave to amend on January 31, 2023 [14].  The Amended Complaint [15] thus became the operative pleading.

Thereafter, Defendants filed the instant Motion to Dismiss Plaintiff's First Amended Complaint [16], which has been fully briefed.  (See Br. in Supp. of Defs.' Mot. to Dismiss [16-1]; Pl.'s Resp. [17]; Defs.' Reply [18].)[1]  For the reasons explained below, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [16] be **GRANTED** and the Amended Complaint [15] **DIMISSED WITH PREJUDICE**.

---

[1] The case style lists the Sheriff's surname as "Labatt."  However, Defendants spell it "Labat."  Because an internet search confirms the Sheriff's surname has only one "t," the Court refers to this Defendant as Sheriff Labat.

## I.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir.

3

2006)).  However, this principle does not apply to legal conclusions set forth in the complaint.  <u>Iqbal</u>, 556 U.S. at 678.

## II.    <u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff began working for Defendant Fulton County on or about December 14, 2016, and at all times relevant hereto served as a Deputy Sheriff.  (Am. Compl. ¶ 13.)  During the COVID-19 Pandemic, Defendant Fulton County established a policy and made Emergency Paid Sick Leave ("EPSL") available to all employees through June 15, 2020.  (<u>Id.</u> ¶ 14.)  In accordance with Defendant Fulton County's policy, Plaintiff requested and was approved to take EPSL.  (<u>Id.</u> ¶ 15.)

In May 2020, Defendant Tyna Taylor directed Plaintiff to return to work immediately and that EPSL was no longer available.  (Am. Compl. ¶ 16.)  Plaintiff subsequently learned that female employees were out during the same time period, or longer, and were utilizing EPSL.  (<u>Id.</u> ¶ 17.)  Plaintiff alleges that, at the behest of Defendant Nina McKinney, Lt. Harold Moore and Defendant Taylor were directed to stop submitting time adjustment sheets for EPSL to Human Resources on Plaintiff's behalf.  (<u>Id.</u> ¶ 18.)  An email was then sent to Human Resources directing that Plaintiff be charged compensatory leave, rather than EPSL, even though EPSL was available through June 15, 2020.  (<u>Id.</u> ¶ 19.)

In June 2020, Plaintiff returned to work and learned that his compensatory leave was utilized instead of the approved EPSL.  (Am. Compl. ¶ 20.)  On or about June 8, 2020, when Plaintiff inquired about the approved EPSL, Defendant Nikki Hawkins informed him that EPSL was still available to employees through June 2020.  (Id. ¶ 21.)

Plaintiff then met with Defendants McKinney, Jeffrey Moffett, Taylor, and Hawkins and requested that his compensatory leave be restored because of the previously approved EPSL.  (Am. Compl. ¶ 22.)  The Defendants refused to follow Fulton County's policy and restore Plaintiff's compensatory leave.  (Id.)  After Plaintiff (again) informed these Defendants that EPSL had been previously approved, Defendant McKinney stated, "Oh well, you're not getting it back," referring to Plaintiff's compensatory leave.  (Id.)

On or about June 11, 2020, Plaintiff filed an internal grievance pursuant to Defendant Fulton County's policies and procedures.  (Am. Compl. ¶ 23.)  On or about July 1, 2020, within two weeks of the filing of Plaintiff's grievance, he was transferred from Court Services to the Fulton County Jail.  (Id. ¶ 24.)  The Jail is commonly and widely known as a less favorable work assignment and is used as a form of discipline to punish employees and/or teach subordinate rank-in-file

employees a lesson.  (Id. ¶ 25.)  It was during this time period that Defendant McKinney stated that she wanted "to get rid of" Plaintiff.  (Id. ¶ 26.)  On July 2, 2020, Plaintiff filed a second internal grievance for retaliation and workplace bullying and harassment.  (Id. ¶ 28.)

In August 2020, Plaintiff's first internal grievance was substantiated (and his compensatory time was partially restored months later).  (Am. Compl. ¶ 29.)  On August 24, 2020, Colonel Leighton Graham issued findings of the Fulton County Sheriff's Office internal investigation into Plaintiff's first internal grievance.  (Id. ¶ 30.)  The investigation was conducted by Captain Leon Gates, who concluded, among other things: (1) that there were some inconsistencies as to why Plaintiff was transferred to the Jail; (2) that Defendant McKinney directed Defendant Taylor to "monitor" Plaintiff and civilian employee Nekia Strickland's attendance for call-outs that coincided with each other; (3) that Defendant McKinney stated to civilian employee S. Barnes on more than one occasions that she wanted to "get rid of [Plaintiff] because he didn't come to work"; (4) that there was no cause for the transfer of Plaintiff to the Jail; (5) that Defendant McKinney acted with ill intent and plausibly influenced the decision to transfer Plaintiff from Court Services to the Jail; (6) that the investigation supported Plaintiff's assertion of retaliation; and

(7) that Plaintiff's supervisors viewed him as an acceptable employee and that no one articulated behavior that would give rise to justification for said transfer.  (<u>Id.</u> ¶ 31.)

In October 2020, Captain Teri Glanton approved Plaintiff to work overtime. (Am. Compl. ¶ 32.)  Plaintiff's overtime assignment was to assist the law library supervisor (Edna Bonteparte) on Thursdays.  (<u>Id.</u>)  Later, Captain Glanton lied about having approved said overtime.  (<u>Id.</u>)

A few days later, Plaintiff notified his immediate supervisor, Sergeant Fields, that an immediate family member in his household was exposed to COVID-19, and that he needed to utilize EPSL to care for his family and self-quarantine to prevent exposure to his co-workers, their families, and inmates.  (Am. Compl. ¶ 33.) Sergeant Fields notified Plaintiff that, at the direction of Defendant Lucinda Strozier, Plaintiff was still required to report to work and that he could not utilize EPSL unless he personally tested positive for COVID-19.  (<u>Id.</u>)  Plaintiff alleges that this directive was in violation of Defendant Fulton County's policy.  (<u>Id.</u>)

On October 6, 2020, Internal Affairs Commander Captain Adriana Christopher conducted an investigation into Defendant McKinney's untruthfulness regarding Plaintiff's transfer to the Jail. (Am. Compl. ¶ 35.)  Captain Christopher's

investigation revealed, among other things, that Defendant McKinney directed Defendant Moffett in mid-June 2020 to transfer Plaintiff to the Jail because of what Defendant McKinney deemed behavior not productive to the team concept of the division.  (Id. ¶ 36.)

Defendant Moffett stated that Defendant McKinney thought that Plaintiff was involved in a personal relationship with a civilian employee which she deemed destructive to daily operations.  (Am. Compl. ¶ 37.)  Defendant Moffett revealed that, after said discussions with Defendant McKinney, he shared said information with then-Deputy Chief Jimmy Carter and requested Plaintiff's transfer.  (Id. ¶ 38.) Defendant Moffett did not tell Defendant McKinney that he had shared said information with Deputy Chief Carter.  (Id.)

Although Defendant McKinney was adamant that she did not speak with Deputy Chief Carter or then-Sheriff Theodore Jackson about Plaintiff, either before or after his transfer, the investigation revealed that the discussion was at the behest of Defendant McKinney and in retaliatory animus towards Plaintiff.  (Am. Compl. ¶ 39.)

On October 13, 2020, Plaintiff submitted an EPSL request to Defendant Hawkins with documentation from his healthcare provider recommending that

8

Plaintiff self-quarantine for 14 days.  (Am. Compl. ¶ 40.)  The next day, Defendant Hawkins requested that Plaintiff make changes to his EPSL request to reflect the dates of October 8-22.  (Id. ¶ 41.)  Shortly thereafter, Plaintiff received a telephone call from Major Cochran informing him that his absences were unexcused.  (Id. ¶ 42.)  Plaintiff was also threatened with disciplinary action if he did not provide a positive COVID-19 test upon his return from leave because the Fulton County Sheriff's Office had a "revised EPSL policy" that was different from Defendant Fulton County's policy.  (Id.)  Plaintiff emailed Major Cochran requesting a copy of the revised policy, but he never received a response.  (Id.)  Plaintiff was subsequently written-up for insubordination.  (Id.)

On October 16, 2020, Defendant Hawkins emailed Plaintiff and informed him that he was approved for leave for October 8-14, 2020, despite having requested that he change the date range on the initial request.  (Am. Compl. ¶ 43.)  On October 21, 2020, Defendant Hawkins informed Plaintiff that the EPSL was submitted and denied with no explanation, and further stated that Plaintiff's leave would not be covered.  (Id. ¶ 44.)  Plaintiff resubmitted a revised EPSL form, but Defendant Hawkins failed to submit the form until November 6, 2020.  (Id. ¶ 45.)

On or about October 29, 2020, Plaintiff returned to work from leave.  (Am. Compl. ¶ 46.)  While working in the law library on the pre-approved overtime assignment, Plaintiff was ordered to clock out by Defendant Strozier.   (Id.)  Defendant Strozier went on to state that Plaintiff would not receive his overtime hours because it was "unapproved" because he did not work his regular shift.  (Id.)  Hours later, Plaintiff clocked in to work his regular shift.  (Id.)

On November 11, 2020, Plaintiff was counseled and written-up for several violations related to his COVID-19 absence and threatened with termination.  (Am. Compl. ¶ 47.)  On November 14, 2020, Plaintiff received a written warning.  (Id. ¶ 48.)

On November 15, 2020, Plaintiff filed his third internal grievance for retaliation and workplace bullying.  (Am. Compl. ¶ 49.)  On December 9, 2020, Plaintiff was transferred (again) to central control.  (Id. ¶ 50.)

On or around April 8, 2021, Plaintiff's internal grievance was upheld;[2] the Grievance Review Committee recommended Plaintiff's return to Court Services.

---

[2] The Court assumes this reference is to Plaintiff's third internal grievance.

(Am. Compl. ¶ 51.)  On April 9, 2021, Plaintiff received counseling for alleged insubordination.  (Id. ¶ 52.)

Plaintiff signed his initial EEOC Charge of Discrimination against Fulton County on May 25, 2021.  (Am. Compl. ¶ 53.)  That Charge alleges disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA").  (See Am. Compl. Ex. A [15], at 25–27 (Charge No. 410-2021-00809).)

In or around July 2021, Plaintiff requested and was approved for Family and Medical Leave Act ("FMLA") leave due to a qualifying medical condition.  (Am. Compl. ¶ 55.)  In September 2021, an unidentified person from Human Resources requested medical clearance and documentation from Plaintiff for his absence from July 9 through August 9 by the end of the week.  (Id. ¶ 56.)  Even though the appropriate documentation had been presented as required, Plaintiff was told he could not return to work until said documentation was provided.  (Id.)  By this time, Plaintiff had returned back to work for nearly two months.  (Id.)  Also in September 2021, Plaintiff learned that his compensatory leave was inappropriately utilized (again).  (Id. ¶ 57.)

On December 16, 2021, Plaintiff amended his initial EEOC Charge of Discrimination to add allegations that Fulton County had discriminated against him

11

on the basis of sex (male) and subjected him to retaliation for engaging in protected activity, both in violation of Title VII of the Civil Rights Act of 1964, as amended. (See Am. Compl. Ex. A [15], at 28-29 (Amended Charge No. 410-2021-00809).)

In January 2022, Plaintiff applied for a vacant Deputy Sheriff Sergeant, Grade 18 position.  (Am. Compl. ¶ 58.)  On February 9, 2022, Plaintiff received an email informing him that he met the qualifications for the position based on his relevant skills and experience.  (Id. ¶ 59.)  On March 25, 2022, Plaintiff learned that a female deputy who had not applied was selected for the Deputy Sheriff Sergeant position.   (Id. ¶ 61.)

In late-March 2022, Plaintiff received his Notice of Right to Sue on his initial and amended Charge of Discrimination (No. 410-2012-00809).  (Am. Compl. ¶ 60; see also id. Ex. A [15], at 30 (copy of March 18, 2022, Notice of Right to Sue letter).)

Plaintiff signed a second EEOC Charge of Discrimination on November 21, 2022 (Charge No. 410-2022-09272), alleging that Fulton County retaliated against him for filing the initial EEOC Charge by denying him promotion to the Deputy

Sergeant position on March 25, 2022.  (See Am. Compl. Ex. A-1 [15], at 32.)[3]  The

EEOC issued a Dismissal and Notice of Rights with regard to this second Charge

on January 6, 2023.  (Id. at 33-36.)

Plaintiff contends that he filed another Charge of Discrimination with the

EEOC on June 7, 2022 (Charge No. 410-2022-05881), but because he failed to

respond to a request for an interview, the agency closed that case.  (Pl.'s Resp. 16

n.2.)  Plaintiff asserts that he subsequently filed the "same" Charge "on September

[sic] 20 [sic], 2022" (assigned Charge No. 410-2022-09272).  (Id.)  Because

whatever Plaintiff submitted to the EEOC on June 7, 2022 was not attached to the

Amended Complaint, the Court cannot consider it in ruling on a Motion to Dismiss.

Moreover, if the EEOC closed the case, no Charge was ever signed under penalty

of perjury and filed with that agency.  Therefore, the Court can only consider the

two Charges attached to the Amended Complaint that were signed by Plaintiff

---

[3] A stamp on the second Charge (i.e., "ATDO Received on 11-23-2022") reflects that the EEOC's Atlanta District Office received Plaintiff's Charge on November 23, 2022.  (See Am. Compl. Ex. A-1 [15], at 32.)  Because any dispute is not material, the Court accepts Plaintiff's allegation that he "filed" this second EEOC Charge on November 21, 2022.

under penalty of perjury—one signed on May 25, 2021 and amended on December 16, 2021 (Ex. A), and another signed on November 21, 2022 (Ex. A-1).

## III.   ANALYSIS

The Amended Complaint contains three Counts.  In Count I, Plaintiff alleges a Title VII retaliation claim against his "employers," whom he alleges are Fulton County and Sheriff Labat (in his official capacity).  (Am. Compl. ¶ 65.)  Plaintiff alleges that he engaged in unspecified activity protected by Title VII (id. ¶ 66), and that Fulton County and Sheriff Labat retaliated against him in various ways, including denial of a promotion to Deputy Sheriff Sergeant, Grade 18.  (Id. ¶ 67.)  In Count II, Plaintiff alleges a violation of the FMLA, 29 U.S.C. § 2601, et seq., by Fulton County and Sheriff Labat.  (Am. Compl. ¶¶ 76-80.)  Finally, in Count III, Plaintiff alleges a claim against all Defendants for their alleged violation of his Fourteenth Amendment right to equal protection of the laws (asserted via 42 U.S.C. § 1983).

### A.   Count I (Title VII Retaliation)

Plaintiff asserts a Title VII retaliation claim against both Sheriff Labat and Fulton County.  The Court analyzes the claims against each Defendant separately below.

14

### 1.   Sheriff Labat

Although Plaintiff sued Sheriff Labat under Title VII for retaliation, he did not name him in the Charges of Discrimination he submitted to the EEOC.  He named only Fulton County.  "Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action.  This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII."  Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1358 (11th Cir. 1994).  As Defendants correctly point out, a Georgia sheriff holds a separate, Constitutionally-created office that is independent from the county he serves.  Ga. Const. art. IX, § 2, ¶ 1(c)(1).  EEOC Charges naming only Fulton County cannot be presumed to include Sheriff Labat.[4]  Therefore, Defendants contend that Sheriff

---

[4] There is nothing alleged in the Amended Complaint or mentioned in the EEOC Charges attached thereto (see Am. Compl. Exs. A, A-1 [15] 26-36) which suggests that Sheriff Labat received anything from the EEOC.

Labat must be dismissed from the Title VII retaliation claim alleged in Count I because he was not named in any of Plaintiff's EEOC Charges. (Defs.' Br. 21-22.)

Plaintiff failed to respond to that argument in his Brief. (Defs.' Reply 14.) That failure has consequences. Local Civil Rule 7.1(B) provides that failure to file a response to a party's motion "shall indicate that there is no opposition to the motion." That Local Rule "requires not just that a party generally 'respond' to a motion but mandates that a party respond to each portion of a motion." Kramer v. Gwinnett Cnty., Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga.), aff'd, 116 F. App'x 253 (11th Cir. 2004) (table decision). Thus, a "party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." Id.; see also Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1148 (N.D. Ga. 1997) ("[U]nder Local Court Rule 7.1 of the United States District Court for the Northern District of Georgia, factual and legal claims to which there is no response should be treated as unopposed.").

Plaintiff's failure to respond to this argument in Defendants' Motion means that he does not oppose dismissal of the Title VII retaliation claim alleged in Count I against Sheriff Labat in his official capacity. See Kramer, 306 F. Supp. 2d at

16

1221.    Despite Plaintiff's failure to respond to Defendants' argument, the undersigned examines the law relating to this defense asserted by Sheriff Labat.

Courts liberally construe the requirement that a party be named in an EEOC Charge in order to be sued later.  Virgo, 30 F.3d at 1358.  Liberal construction is often necessary because "EEOC complaints are generally written by lay persons unfamiliar with Title VII's technical requirements."  Scelta v. Delicatessen Support Servs., 57 F. Supp. 2d 1327, 1354 (M.D. Fla. 1999) (quoting Romero v. Union Pac. R.R., 615 F.2d 1303, 1311 (10th Cir. 1980)).  Moreover, Title VII's administrative procedures are not intended to be a "stumbling block" to the accomplishment of the statute's objectives.  Id. (quoting Hammer v. Hillsborough Cnty. Through Bd. of Cnty. Comm'rs, 927 F. Supp. 1540, 1543 (M.D. Fla. 1996)).

Thus, a party not named in an EEOC Charge may still be subject to suit under Title VII if the purposes of the Act have been fulfilled.  Virgo, 30 F.3d at 1358-59. When determining whether the purposes of Title VII have been fulfilled, "courts do not apply a rigid test but instead look to several factors" including:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed

17

party actually was prejudiced by its exclusion from the EEOC proceedings.

Id. at 1359.

Applying these factors mandates dismissal of Sheriff Labat from Count I. As for the first factor, the Amended Complaint does not allege that Fulton County and Sheriff Labat have a similarity of interest. Indeed, they are legally separate entities. Second, it is obvious that Plaintiff could have ascertained the Sheriff's identity when he filed his EEOC Charges. He worked for the Sheriff. As for the third factor, the Amended Complaint does not allege that Sheriff Labat received adequate notice of the EEOC charges; indeed, the Charges and the Notices of Right to Sue reflect that they were mailed to Fulton County, not to the Sheriff. With regard to the fourth factor, there is no allegation that the unnamed party (Sheriff Labat) had an adequate opportunity to participate in the conciliation process. (See supra note 4.) Finally, given the position that the Sheriff has taken in his Motion, he was prejudiced by his exclusion from the EEOC proceedings.[5] Therefore,

─────────────────

[5] This case is similar to McClure v. Oasis Outsourcing II, Inc., 674 F. App'x 873 (11th Cir. 2016) (per curiam). In McClure, the Plaintiff identified "Holiday Inn Express" in her EEOC Charge, presumably because that was the physical name of the hotel at which she worked. Id. at 875. However, the body of the Charge made no mention of the actual employer (i.e., the Defendant named "Oasis") or

because Plaintiff did not oppose Defendants' Motion to Dismiss Sheriff Labat from

Count I, and because the law requires it, the undersigned **RECOMMENDS** that

Defendants' Motion to Dismiss Sheriff Labat from Plaintiff's Title VII retaliation

claim (Count I) be **GRANTED**.

## 2.    Fulton County

To assert a Title VII retaliation claim, a plaintiff must plausibly allege that

(1) he participated in an activity protected by Title VII; (2) he suffered an adverse

employment action; and (3) a causal connection exists between participation in the

protected activity and the adverse employment action.  Gogel v. Kia Motors Mfg.

of Ga., Inc., 967 F.3d 1121, 1134 (11th Cir. 2020).

Plaintiff alleges that he engaged in activity protected by Title VII.  (Am.

Compl. ¶ 66.)  Unfortunately, the Amended Complaint fails to specify what those

_____

actions by any of its employees.  There was nothing alleged or submitted by the
parties indicating that the EEOC Charge or Dismissal and Notice of Rights were
provided to the employer during the administrative process.  Id.  Moreover, the
Plaintiff had payroll documents showing Oasis as her employer before she filed the
Charge, and in fact had previously filed a workers' compensation claim against
Oasis.  Id.  The Eleventh Circuit affirmed the dismissal of the action against Oasis,
holding that the Plaintiff "failed to demonstrate that she exhausted the
administrative requirements of the ADA or that the purposes of the act were
fulfilled."  Id.  The same is true here.

19

protected activities were.  The Court must therefore sift through the Amended Complaint in an attempt to determine what Plaintiff did that might have constituted protected activity.

The Amended Complaint mentions that Plaintiff filed three internal grievances with Fulton County.  An internal grievance can be protected activity. See Rollins v. State of Fla. Dep't of L. Enf't, 868 F.2d 397, 400 (11th Cir. 1989) ("[P]rotection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like Rollins, who informally voice complaints to their superiors or who use their employers' internal grievance procedures.").  However, an internal grievance can only constitute protected activity "if the grievance alleges discrimination based upon a statutorily-protected ground." Bailey v. City of Huntsville, 517 F. App'x 857, 861 (11th Cir. 2013) (per curiam).  "[T]he employee must, at the very least, communicate her belief that discrimination is occurring to the employer.  It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." Murphy v. City of Aventura, 616 F. Supp. 2d 1267, 1281 (S.D. Fla. 2009) (quoting Webb v. R & B Holding Co., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)).

A review of Plaintiff's allegations about his three internal grievances does not show that he used them to complain about discrimination based on his gender (or any other protected characteristic).  See Hawk v. Atlanta Peach Movers, 469 F. App'x 783, 784-86 (11th Cir. 2012) (per curiam) (employee's complaints about an employer's claimed unfair actions that have nothing to do with race, gender, or any other protected class characteristic, do not constitute statutorily protected activity for purposes of a Title VII retaliation claim).

For example, Plaintiff's first internal grievance, filed on June 11, 2020, followed the June 8, 2020 meeting where he alleges that Defendants refused to restore his compensatory time.  (Am. Compl. ¶¶ 21-23.)  Plaintiff's second grievance, filed on July 2, 2020 for "retaliation and workplace bullying," followed his transfer to the Jail on July 1, 2020. (Id. ¶¶ 24-26, 28.)  Plaintiff's third grievance, filed on November 15, 2020 for "retaliation and workplace bullying," followed him being "counseled and written up" on November 11, 2020 for his COVID-19 absences and the written warning issued on November 14, 2020.  (Id. ¶¶ 47-49.) Although two of these grievances were for claimed "retaliation," there are no facts alleged to show that Plaintiff asserted in these grievances any mistreatment based on his sex (or any other protected characteristic).  See Coutu v. Martin Cnty. Bd.

of Cnty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding that an employee did not engage in protected activity where, during a grievance hearing, the employee made no allegation and offered no proof of unlawful discrimination, but instead contended only that she deserved better treatment).

The other protected activity alleged in the Amended Complaint is the filing of Charges of Discrimination with the EEOC.  Title VII prohibits an employer from retaliating against an employee because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute.  42 U.S.C. § 2000e-3(a).

Plaintiff filed two Charges with the EEOC:  (1) the initial May 25, 2021 Charge alleging discrimination and retaliation in violation of the ADA, which was amended on December 16, 2021 to allege sex discrimination and retaliation in violation of Title VII; and (2) the November 21, 2022 Charge alleging that Fulton County retaliated against him for filing the initial Charge.

Plaintiff alleges four adverse employment actions:  (1) continuous bullying and harassment in the workplace; (2) transfers to the Jail (on July 1, 2020) and to central control (on December 9, 2020); (3) retaliation for speaking "out against inappropriate procedures by management"; and (4) denial of promotion to the

Deputy Sheriff Sergeant, Grade 18 position (on March 25, 2022).  (Am. Compl. ¶ 67.)

The first claimed instance of misconduct (i.e., "continuous bullying and harassment") fails to constitute protected activity because the Amended Complaint does not allege that such bullying and harassment occurred because of Plaintiff's sex (or any other protected characteristic).

The second set of events (i.e., transfers to the Jail on July 1, 2020, and to central control on December 9, 2020) occurred well before Plaintiff filed his initial EEOC Charge on May 25, 2021 (alleging disability discrimination under the ADA) and amended it on December 16, 2021 (alleging race discrimination and retaliation under Title VII).  Because these transfers occurred *before* the filing of the Charge and the Amendment with the EEOC, the transfers could not have been in retaliation for their filing.  See Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999) (requiring that the adverse employment action follow the protected conduct).

As for the third claimed incident, Plaintiff does not allege that management engaged in these "inappropriate procedures" because of his sex (or any other protected characteristic).  Moreover, even if Plaintiff had engaged in protected

23

activity by speaking out, the Amended Complaint does not allege what adverse employment action followed this protected activity.

The fourth claimed instance of misconduct (i.e., denial of promotion to the Deputy Sheriff Sergeant, Grade 18 position on March 25, 2022) followed the filing of the Amended Charge on December 16, 2021.  It is plausible that the protected activity in December 2021 led to the retaliatory denial of the promotion in March 2022.[6]  Denial of the promotion on March 25, 2022 was a "discrete . . . retaliatory act [that] 'occurred' on the day that it 'happened.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).  Plaintiff had 180 days after March 25, 2022 to file a Charge with the EEOC alleging that he was retaliated against for filing the Amended Charge.  See 42 U.S.C. § 2000e-5(e)(1); see also Pierri v. Cingular Wireless, LLC, 397 F. Supp. 2d 1364, 1372 (N.D. Ga. 2005) (before suing under Title VII, a plaintiff must satisfy certain statutory prerequisites, such as filing a

_____

[6] The Court does not agree with Defendants' argument that a complaint must allege facts showing that Defendants were aware of Plaintiff's Amended Charge (No. 410-2021-00809) or that it played any part in Defendants' decision making for the Deputy Sheriff Sergeant position.  (Defs.' Br. 20.)  While such proof would be critical on a motion for summary judgment, it is not necessary at this early stage of the proceedings.

charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred).

Because Plaintiff filed the November 21, 2022 EEOC Charge 241 days after he learned that the promotion had been denied to him, he failed to meet the 180-day filing requirement.  Thus, any Title VII retaliation claim based on denial of that promotion must be dismissed for failure to exhaust administrative remedies.  See H&R Block E. Enters., Inc. v. Morris, 606 F.3d 1285, 1295 (11th Cir. 2010) (per curiam) (affirming entry of summary judgment where plaintiff failed to file a timely charge of discrimination with the EEOC within 180 days of the last discriminatory act).[7]  Therefore, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Fulton County from Plaintiff's Title VII retaliation claim (Count I) be **GRANTED**.

---

[7] The timely filing of an EEOC charge, "like a statute of limitations, is subject to waiver, estoppel and equitable tolling."  Forehand v. Fla. State Hosp. at Chattahoochee, 89 F.3d 1562, 1570 n.17 (11th Cir. 1996) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392 (1982)).  However, the Amended Complaint makes no allegations which might bring this case under any of those equitable doctrines.

**B.**   **Count II (FMLA)**

Plaintiff accuses both Sheriff Labat and Fulton County of violating the FMLA in Count II.  Upon review of the preliminary allegations in the body of the Amended Complaint as well as those alleged in Count II, the Court notes the following.  Plaintiff alleges that in or around July 2021, he requested and was approved for FMLA leave due to a "qualifying medical condition." (Am. Compl. ¶ 55.)  His FMLA leave lasted from July 9 through August 9, 2021.  (Id. ¶ 56.) Plaintiff alleges that in September 2021, Human Resources requested medical clearance and documentation for that approved FMLA absence.  (Id.)  Plaintiff claims that, even though the appropriate documentation had been presented as required, he was told he could not return to work until said documentation was provided, but by this time, he had already been back at work for almost two months. (Id.)

In Count II, Plaintiff alleges that he was approved for and took FMLA leave (which the Court assumes was the 30-day leave referenced above).  (Am. Compl. ¶ 77.)[8]  Plaintiff further alleges that he suffered harassment, interference and

─────────────────

[8] The FMLA entitles eligible employees to take up to 12 work weeks of unpaid leave per year.  An employee may take leave under the FMLA for: (A) "the

discrimination for taking statutorily protected leave, particularly when Defendants Labat and Fulton County required him to provide documentation beyond the scope of what is required under the FMLA.  (Id.)  The Amended Complaint also alleges that Plaintiff was subjected to adverse employment actions involving interference and retaliation for taking FMLA leave when the two Defendants interfered with his ability to take entitled leave and threatened him upon return with unpaid leave and disciplinary action.  He further claims that these adverse actions were causally connected to his FMLA leave.  (Id. ¶ 79.)

The FMLA creates a private right of action to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction."  29 U.S.C. § 2617(a)(2).  However, Plaintiff seeks only money damages for Defendants' alleged willful violation of the

––––––––––––––––––––

birth of a son or daughter . . . in order to care for such son or daughter," (B) the adoption or foster-care placement of a child with the employee, (C) the care of a "spouse . . . son, daughter, or parent" with "a serious health condition," or (D) the employee's own serious health condition when the condition interferes with the employee's ability to perform at work.  29 U.S.C. § 2612(a)(1).  Because the Amended Complaint alleges that Plaintiff requested and was approved for FMLA leave due to a qualifying medical condition (Am. Compl. ¶ 55), the Court must assume that he sought and obtained leave for his own serious health condition.  This is commonly called "self-care leave."

FMLA.  (Am. Compl. ¶ 80.)  The Court analyzes Plaintiff's FMLA claims against Sheriff Labat and Fulton County separately below.

### 1.   Sheriff Labat

Sheriff Labat contends that Plaintiff cannot sue him for money damages under the FMLA because he has Eleventh Amendment immunity.  (Defs.' Br. 14-17.)  Plaintiff disagrees.  (Pl.'s Resp. 13.)  For the reasons stated below, the undersigned agrees with the Sheriff.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI. Interpretations of this Amendment firmly "establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (citation and internal quotation marks omitted).  Eleventh Amendment immunity stays "in effect when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (citations omitted).  The bar to suit remains unless a waiver of immunity or congressional

28

override exists.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  A State official sued in his official capacity is afforded this protection because a judgment against him would "impose[] liability on the entity that he represents." Graham, 473 U.S. at 169 (citation omitted).  In Coleman v. Ct. of App. of Md., 566 U.S. 30, 35-36 (2012), the Supreme Court held that Congress failed to abrogate the states' sovereign immunity against money damages claims in enacting the FMLA's "self-care" leave provision.

Sheriffs in Georgia are "arms of the state" for Eleventh Amendment purposes when exercising their authority over personnel in their employ.  Pellitteri v. Prine, 776 F.3d 777, 780 (11th Cir. 2015) (Georgia sheriff entitled to Eleventh Amendment immunity against wrongful termination claims brought under the ADA); see also Krage v. Macon Bibb Cnty. Ga., No. 22-10061, 2022 WL 16707109, at *4 (11th Cir. Nov. 4, 2022) (per curiam) (Sheriff was an "arm of the State" when he decided how deputies would be compensated for on-call time; thus, sovereign immunity barred plaintiffs' FLSA claims against him); Cunningham v. Fulton Cnty., No. 1:16-CV-533-RWS, 2017 WL 11585209, at *4 (N.D. Ga. Nov. 8, 2017) (Fulton County Sheriff Jackson in his official capacity is entitled to Eleventh Amendment immunity against employees' FLSA and breach of contract

29

claims based on violation of personnel policies), <u>aff'd sub nom.</u> <u>Cunningham v.</u>
<u>Fulton Cnty., Ga.,</u> 785 F. App'x 798 (11th Cir. 2019) (per curiam); <u>Gray v. Royal,</u>
181 F. Supp. 3d 1238, 1247 (S.D. Ga. 2016) (Eleventh Amendment bars employees'
state and federal law claims asserted against Sheriff in his official capacity).

Because Plaintiff's claims for money damages under the FMLA's self-care
leave provision in Count II (<u>see</u> <u>supra</u> note 8) are premised on employment-related
personnel decisions, Sheriff Labat has Eleventh Amendment immunity against
them.  Therefore, the undersigned **RECOMMENDS** that Defendants' Motion to
Dismiss Plaintiff's FMLA claims against Sheriff Labat (Count II) be **GRANTED**.

### 2.   <u>Fulton County</u>

Fulton County argues that the Amended Complaint fails to allege plausible
claims for interference or retaliation against it under the FMLA.  (Defs.' Br. 22-
24.)  Unfortunately, Plaintiff failed to respond to this argument (Defs.' Reply 14)
which, as noted above, means that he does not oppose dismissal of this FMLA
claim against Fulton County.

Even if Plaintiff had responded, it would have made no difference, because
the Amended Complaint fails plausibly to allege that Fulton County violated the
FMLA.  Congress enacted the FMLA in part to address problems arising from

30

"inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(a)(4). Congress designed the Act to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and "accomodat[ing] the legitimate interests of employers."  Id. § 2601(b)(2)-(3).  "The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)).

To preserve the availability of FMLA rights and to enforce them, the Act creates two types of claims:  (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001); see also 29 U.S.C. § 2615 (prohibiting employer from interference with FMLA rights).  Plaintiff alleges both types of claims here.

31

Under the FMLA's anti-interference provision, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the [FMLA]." 29 U.S.C. § 2615(a)(1). To state an interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1207; see also White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015) ("An interference claim has two elements:  (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit.").

The Amended Complaint fails to allege that Fulton County denied Plaintiff any benefit to which he was entitled under the FMLA.  Indeed, the Amended Complaint alleges that Plaintiff asked for and received his FMLA leave.  (Am. Compl. ¶¶ 55, 77.)   Because no FMLA leave was denied to Plaintiff, any interference claim fails under Rule 12(b)(6).  See Odum v. Dolgencorp, LLC, No. 4:14-CV-0151-HLM, 2015 WL 12697644, at *2 (N.D. Ga. Sept. 9, 2015) (adopting magistrate judge's recommendation that summary judgment be granted because plaintiff has no interference claim; he received all of the FMLA benefits to which he was entitled).

To establish FMLA retaliation, Plaintiff must allege facts showing that Fulton County intentionally discriminated against him for exercising his right to medical leave. See 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c). Courts apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when evaluating FMLA claims. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 798 (2000). To establish a prima facie claim of retaliation under the FMLA, a plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered a materially adverse action, and (3) there is a causal connection between the two. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010); see also Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1268 (11th Cir. 2008) (per curiam) (FMLA retaliation claims assessed under McDonnell Douglas framework).

Assuming that the 30-day FMLA leave Plaintiff took was statutorily protected conduct, the Amended Complaint alleges that Plaintiff was subjected to adverse employment actions when Defendants (1) required him to provide documentation and documentation beyond the scope of what was required under the FMLA, and (2) threatened him upon return with unpaid leave and disciplinary action. (Am. Compl. ¶ 78.)

The allegations about submission of documentation fails to state a plausible claim because the FMLA allows an employer to require an employee to support a leave claim with documentation, i.e., a certification from a health care provider when leave is requested (29 C.F.R. § 825.305), as well as upon return to show that he is fit for duty (id. § 825.312).   Moreover, Plaintiff fails to allege what documentation Fulton County required that was in excess of what was allowed under the statute.   Finally, requiring documentation is not an adverse employment action because it is not "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

The other allegations, i.e., that Fulton County "threatened Plaintiff upon return with unpaid leave and disciplinary action," fail to constitute "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).   The Amended Complaint asserts only that Plaintiff was "threatened" with adverse actions (presumably in retaliation for taking protected FMLA leave).   The Amended Complaint does not allege that Fulton County actually followed through on those threats by placing Plaintiff on unpaid leave or disciplining him in any way.   In other

words, the Amended Complaint fails to allege that anything materially adverse actually happened to Plaintiff.  He still has his job.  As such, there is insufficient factual content pled for the Court to draw the reasonable inference that Fulton County is liable for retaliation in violation of the FMLA.  <u>Twombly</u>, 550 U.S. at 556.  Therefore, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's FMLA claims against Fulton County (Count II) be **GRANTED**.

### C.    <u>Count III (14th Amendment Equal Protection Violation)</u>

Plaintiff alleges in Count III that all Defendants violated his Fourteenth Amendment right to equal protection of the law.  (Am. Compl. ¶ 83.)  He pursues this claim under 42 U.S.C. § 1983.  (<u>Id.</u>)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  Thus, to establish an equal protection violation a plaintiff ordinarily shows that the state treated him differently from a similarly situated person based on a

constitutionally protected interest, such as race.  <u>Jones v. Ray</u>, 279 F.3d 944, 946-

47 (11th Cir. 2001).[9]

A thorough review of the Amended Complaint fails to locate any allegation

by Plaintiff suggesting that he was treated differently by any of the Defendants

based on a constitutionally protected interest, such as his race.  In other words, no

plausible equal protection violation has been alleged.  <u>See</u> <u>Parker v. Smyrna Police</u>

<u>Dep't</u>, No. 1:10-CV-03104-TCB, 2010 WL 4540286, at *2 (N.D. Ga. Oct. 29,

2010) (dismissing complaint where plaintiff "has not alleged any fact suggesting

that he was treated differently based on a 'constitutionally protected interest such

as race'" (quoting <u>Jones</u>, 279 F.3d at 947)).

Although Plaintiff's Amended EEOC Charge alleges sex discrimination (<u>see</u>

Am. Compl. Ex. A [15], at 28), Plaintiff makes no Title VII sex discrimination

------

[9] The Supreme Court has recognized the Equal Protection Clause is implicated in "class of one" claims, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam).  Plaintiff does not allege this type of claim in the Amended Complaint, for good reason.  <u>See</u> <u>Engquist v. Or. Dep't of Agr.</u>, 553 U.S. 591, 607 (2008) ("[C]lass-of-one theory of equal protection has no application in the public employment context . . . .").

claim in his Amended Complaint.  Although an equal protection claim can arise from sex discrimination, the Amended Complaint fails to explain which protected characteristic was the basis for Defendants' alleged denial of equal protection to Plaintiff.  Defendants pointed out this deficiency in the Brief they filed in support of the initial Motion to Dismiss.  (See Defs.' Mot. to Dismiss [4] 22.)[10]  Plaintiff acknowledged this deficiency in his Response Brief to that initial Motion to Dismiss and asserted that he would seek leave of court to amend regarding this claim.  (See Pl.'s Resp. [8] 14-15.)  However, a comparison of the allegations of Count III in the initial Complaint [1] to the allegations of Count III in the Amended Complaint [15] reflects that Plaintiff did not correct those deficiencies.  Given the failure of the Amended Complaint to allege facts showing some basis for the claimed deprivation of equal protection rights, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Count III (violation of Fourteenth Amendment

---

[10] "[W]hile the amended EEOC charge alleges discrimination based on sex, the Complaint fails to identify if that is the class/trait Plaintiff alleges is the basis for alleged differential treatment.  Without that information, this Court is unable to assess Plaintiff's claim that he was intentionally treated differently from similarly situated individuals.  Thus, Plaintiff has failed to articulate a claim for violation of his right to equal protection of the law under the Fourteenth Amendment and the claim should be dismissed."  (Defs.' Mot. to Dismiss [4] 22.)

right to equal protection) be **GRANTED**.  Moreover, given his failure to amend to

correct this deficiency as he said he would, there is no need to <u>sua sponte</u> grant

Plaintiff leave to amend again.

> **D.**     **The Amended Complaint is Not a Shotgun Pleading**

Defendants seek dismissal of the Amended Complaint as a "shotgun

pleading." (Defs.' Br. 8-10.)  Plaintiff denies that he has filed a shotgun pleading.

(Pl.'s Resp. 9-11.)  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or

both, are often disparagingly referred to as 'shotgun pleadings.'"  <u>Weiland v. Palm</u>

<u>Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1320 (11th Cir. 2015); <u>see</u> Fed. R. Civ.

P. 10(b) (requiring claims to be listed "in numbered paragraphs, each limited as far

as practicable to a single set of circumstances" and, for clarity, claims founded on

separate transactions or occurrences to be stated in separate counts).  This term has,

at times, been used synonymously to refer to poorly drafted complaints.  <u>Weiland</u>,

792 F.3d at 1321.  Shotgun pleadings typically fall into one of several categories,

including complaints that have vague, conclusory, and immaterial facts throughout

the pleading, and complaints that do not specify separate counts for each cause of

action.  <u>Id.</u> at 1321-22; <u>see also</u> <u>Cesnik v. Edgewood Baptist Church</u>, 88 F.3d 902,

905 (11th Cir. 1996) (stating that a shotgun pleading is "framed in complete

disregard of the principle that separate, discrete causes of action should be plead[ed] in separate counts").

The most common error occurs when the complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Other common errors include failing to "separat[e] into a different count each cause of action or claim for relief" or "assert[ing] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1323. The one unifying characteristic of all shotgun pleadings is that "they fail to one degree or another, and in one way or another, to give the defendant adequate notice of the claims against them and the grounds upon which each claims rests." Id.

The Amended Complaint should not be dismissed on the basis that it is a shotgun pleading. Although it has some legal deficiencies (identified above), both Defendants and the Court could tell which Defendant was responsible for which alleged acts or omission and against which Defendant a claim was brought. Given

the arguments in the Motion to Dismiss, it is apparent that each Defendant had adequate notice of the claims against it, him or her and the grounds upon which each claim rested.

**IV.** **CONCLUSION**

For the reasons explained above, all of the claims alleged against all the Defendants fail to state a claim.  Therefore, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [16] be **GRANTED** and the Amended Complaint [15] **DIMISSED WITH PREJUDICE**.

**SO RECOMMENDED**, this 4th day of April, 2023.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE